## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **REILLY CAVANAUGH,** | * | **CIVIL ACTION NO.:** |
| **INDIVIDUALLY AND ON BEHALF** | * | |
| **OF ALL OTHERS SIMILARLY** | * | **JUDGE:** |
| **SITUATED, & DANIEL RUSSO** | * | |
| | * | **MAGISTRATE:** |
| **Plaintiffs** | * | |
| | * | **JURY TRIAL DEMANDED** |
| **VERSUS** | * | |
| | * | |
| **ONPATH FEDERAL** | * | |
| **CREDIT UNION** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff Reilly Cavanaugh who brings this collective action and lawsuit on behalf of himself and all other similarly situated employees to recover unpaid overtime wages from the Defendant OnPath Federal Credit Union. Additionally, Plaintiff Daniel Russo brings personal claims for his retaliatory termination relating to lodging complaints about unpaid wages to Defendant OnPath Federal Credit Union.

## NATURE OF THE ACTION

1.

The Fair Labor Standards Act ("FLSA") is designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers ..." 29 U.S.C. § 202(a). To achieve its humanitarian goals, the

[1]

FLSA defines appropriate pay deductions and sets overtime pay, minimum wage, and record keeping requirements for covered employers. 29 U.S.C. §§ 206(a), 207(a), 211(c).

2.

Defendant OnPath Federal Credit Union violated the FLSA by failing to pay its nonexempt employees at one and one-half times their regular rates of pay for hours worked in excess of forty (40) hours per each seven (7) day workweek.

3.

Plaintiff Reilly Cavanaugh brings this collective action under section 216(b) of the FLSA on behalf of himself and all other similarly situated employees in order to recover unpaid overtime wages.

4.

Plaintiff Daniel Russo brings this action for retaliatory discharge in violation of the FLSA.

## JURISDICTION AND VENUE

5.

Plaintiff Reilly Cavanaugh's claims arise under the FLSA. 29 U.S.C. §§ 201-219. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Plaintiff Daniel Russo's retaliation claims also arise under the FLSA. 29 U.S.C. §§ 201-219.

6.

Venue is proper in this district pursuant to 28 U.S.C. § l39l(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Louisiana.

[2]

**PARTIES**

7.

Plaintiff Reilly Cavanaugh ("Mr. Cavanaugh") is a person of the full age of majority and resident of Orleans Parish.

8.

Plaintiff Daniel Russo ("Mr. Russo") is a person of the full age of majority and resident of Jefferson Parish.

9.

Defendant OnPath Federal Credit Union, formerly known as ASI Federal Credit Union ("OnPath"), is a federal credit union with its principal place of business located in Metairie, Louisiana and branches throughout Southeast Louisiana.

10.

Whenever in this Complaint it is alleged that OnPath committed any act or omission, it is meant that the OnPath's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of OnPath or was done in the routine and normal course and scope of employment of the OnPath's officers, directors, vice principals, agents, servants or employees.

[3]

## FACTS

11.

OnPath has 11 locations in the territorial jurisdiction of this Court, 52,978 members, and $623,500,000 million in assets as of September 30, 2023.[1]

12.

OnPath is presently in agreement to acquire Louisiana Federal Credit Union pushing its assets over $1 billion.[2]

13.

Mr. Cavanaugh began working at OnPath on or around March 2021 as a Junior Commercial Loan Officer.

14.

Mr. Russo began working at OnPath on or around August 2018 as their Director of Residential Lending and subsequently became Vice President of Commercial Lending.

15.

In total, the Commercial Lending Department/Team at OnPath consisted of four OnPath employees: Mr. Russo, Mr. Cavanaugh, Kiara Scott, and Lacey Keefe.

16.

The Commercial Lending Department/Team was responsible for the entire commercial loan portfolio at OnPath.

---

[1] https://www.cutimes.com/2023/12/12/two-new-orleans-area-credit-unions-to-merge/ *last accessed* March 6, 2024.
[2] https://www.cutimes.com/2023/12/12/two-new-orleans-area-credit-unions-to-merge/ *last accessed* March 6, 2024.

17.

While employed by OnPath, Mr. Cavanaugh regularly worked in excess of forty (40) hours per week.

18.

OnPath did not pay Mr. Cavanaugh at one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per each seven (7) day workweek as required by the FLSA.

19.

Instead, OnPath paid Mr. Cavanaugh a sum which does not take into consideration the number of hours worked per week.

20.

Upon information and belief, these same illegal pay practices were applied to all similarly situated employees of OnPath who were compensated in the same or similar manner to that of Mr. Cavanaugh.

## **MR. CAVANAUGH'S INDIVIDUAL ALLEGATIONS**

21.

OnPath failed to properly compensate Mr. Cavanaugh at the rate of time and one-half for all overtime hours.

22.

As a nonexempt employee, Mr. Cavanaugh was legally entitled to be paid at one and one-half times their "regular rate" for all hours worked in excess of forty (40) during each seven (7) day workweek. 29 U.S.C. § 207(a).

[5]

23.

OnPath failed to pay Mr. Cavanaugh for all hours worked in excess of forty (40) at one and one-half times his regular rate.

24.

Instead, OnPath paid Mr. Cavanaugh a sum without regard to the number of hours worked per week.

25.

As a result, Mr. Cavanaugh has been "shorted" on his paychecks by not being paid at a rate of time and one-half for hours worked in excess of forty (40).

26.

In the event that OnPath classified Mr. Cavanaugh as exempt from overtime, Mr. Cavanaugh was misclassified, as no proper exemption enumerated within the guidelines of the FLSA excused OnPath from appropriately paying Mr. Cavanaugh full overtime wages for hours worked in excess of forty (40) hours during each seven (7) day workweek, as is specifically required by the FLSA.

27.

Rather, OnPath knowingly, willfully, and with reckless disregard, carried out its illegal pattern and practice of failing to pay Mr. Cavanaugh proper overtime wages.

28.

The FLSA requires employers to keep accurate records of hours worked by nonexempt employees. 29 U.S.C. § 211(c).

[6]

29.

In addition to the pay violations of the FLSA identified above, OnPath also failed to keep proper time records as required by the FLSA.

30.

The illegal pattern or practice on the part of OnPath with respect to compensation and failure to maintain accurate time records are direct violations of the FLSA.

31.

No exemption excuses OnPath from failing to pay Mr. Cavanaugh his proper overtime rate of time and one-half for all hours worked in excess of forty (40).

32.

OnPath has not made a good faith effort to comply with the FLSA.

33.

Rather, OnPath knowingly, willfully and with reckless disregard carried out an illegal pattern or practice regarding overtime compensation and the payment of wages to Mr. Cavanaugh.

## **MR. RUSSO'S RETALIATION ALLEGATIONS**

(Apply to Mr. Russo only)

34.

During 2022, Mr. Russo and the commercial lending team worked pursuant to a Commercial Lending Incentive Plan ("Contract") which contained a team incentive provision which OnPath drafted, signed, and provided to the commercial lending team in January 2022. This provision provided an example calculation formula used to calculate a non-discretionary bonus

that would be paid to the commercial lending team at the end of the year depending on the growth of the commercial loan portfolio.

35.

This claim involves OnPath's refusal to honor the Contract's provisions relating to the team incentive bonus calculation and subsequent decision to terminate Mr. Russo's position after he complained about the Contract not being honored in violation of the law.

36.

Throughout 2022, OnPath agreed the team incentive example calculation formula in the Contract results in a $1,195,412.56 payout to be split evenly among the four member commercial lending team.

37.

Accordingly, under the terms of the Contract, each member of the four member commercial lending team earned a $298,853.14 bonus payment.

38.

However, OnPath refused to use the example calculation formula in the Contract to determine the payment amount as written in the Contract.

39.

Under Federal Law, group production bonuses based on a pre-determined formula, such as the bonus in this case, are non-discretionary and included in an employee's regular rate of pay.[3]

---

[3] Wage and Hour Division, U.S. Dept. of Labor, Fact Sheet #56C: Bonuses under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses *last accessed* December 16, 2023.

40.

The incentive provision of the Contract:

**Team incentive:**

- 5% of Net/ Net profitability to be paid out January of 2023 based on overall profitability at year end.  Profitability ratios are calculated based on Weighted Average Rate net of Charge off, Operating Expense, Cost of Funds and Opportunity Cost
  - *Goal is a minimum of 1.5% to earn incentive*
  - *Incentive calculated on 5% of the dollar amount over the 1.5% threshold*

1

DocuSign Envelope ID: 6DD08985-629C-4C8B-BBE7-7B8E114FAA12



*Example:  As of June; Goal is 1.5% (goal to reach threshold) Incentive paid on any amount over the threshold at 5% net/net (currently 1.5% of the portfolio is $981,731.63, therefore the portfolio would have to be at $66,430,506 to reach 1.5% threshold) 5% of any amount over that would be paid annually split evenly with all members of the Commercial team. (if you end the year with $68,000,000 in the portfolio which is above the threshold of $66,430,506, the team would earn 5% on the difference which =$1,569,493 which would yield $78,475 in incentive to be split.  Split 4 ways currently with the staff we have would be a $19,619 bonus each.)*

- Fee income: 15% of the 1% total collected annually will be paid out annually (January 2023) on total fee income based on the 1% origination fee.  This will be split evenly by the team. Example: if 200,000 is collected for the year of 2022, 15% is $30,000 divided by 4 is $7500.00 Bonus.

**Figure 1.  Team Incentive provision of Contract.**

41.

The Contract remained in place for all of 2022.

42.

All four team members met the requirements of the Contract.

43.

In 2022, the commercial lending team grew OnPath's commercial loan portfolio by $23,880,518.00 in 2022 nearly doubling OnPath's goal for the team of $12,000,000.00 in annual growth.

44.

OnPath's beginning portfolio balance for 2022 was $70,232,494.

[9]

45.

OnPath's ending portfolio balance for 2022 was $94,113,012.

46.

The table on the following page represents the positive and negative growth of the OnPath

commercial loan portfolio throughout 2022.



**Figure 2.  OnPath Commercial Loan Growth of Portfolio in 2022**

47.

Accordingly, under the terms of the Contract, Mr. Russo, Mr. Cavanaugh, Kiara Scott, and

Lacey Keefe were each owed $298,853.14 calculated according to the team incentive as follows:

| Commercial Lending Compensation Plan- Team Incentive | | | | |
|---|---|---|---|---|
| Yearly payout | | 2022 Team Incentives | | |
| | | | | |
| # of Team Members: | | 4 | | |
| | | | | |
| | | | | |
| Commercial Portfolio Balance January 1, 2022 | | $70,232,494.00 | | |
| Growth Threshold | | $1,053,487.41 | | |
| Commercial Portfolio Balance December 31, 2022 | | $94,113,012.00 | | |
| Net Growth Above Threshold | | $22,827,030.59 | | |
| Net Portfolio Growth Payout | | $1,141,351.53 | | |
| Net Portfolio Growth Payout per Commercial Team Member | | $285,337.88 | | |
| | | | | |
| Total Origination Fees Collected for 2022 | | $360,406.93 | | |
| Total Origination Fees Collect  Payout | | $54,061.04 | | |
| Total  Origination fees Collected Payout per  Commercial Team Member | | $13,515.26 | | |
| | | | | |
| Total Annual Incentive Payout per Commercial Team Member | | $298,853.14 | | |
| | | | | |
| Name | | | Qualified | Paid Incentive |
| Daniel Russo | | $        298,853.14 | Y | $          298,853.14 |
| Reilly Cavanaugh | | $        298,853.14 | Y | $          298,853.14 |
| Kiara Scott | | $        298,853.14 | Y | $          298,853.14 |
| Lacey Keefe | | $        298,853.14 | Y | $          298,853.14 |
| | | | Total: | $      1,195,412.56 |
| | | | | |
| Approving VP of Lending:    ___Daniel Russo_____ | | | | |
| Approving Chief Operationing Officer: _____ | | | | |

**Figure 3.  Calculation submitted by Commercial Lending Team to OnPath.**

48.

In fact, Mr. Russo submitted the above spreadsheet to OnPath in early January 2023 for

payment of the 2022 bonus.

49.

In fact, OnPath agreed that $1,195,412.56 is owed to the commercial lending team if the

Contract's example calculation formula is used to calculate the bonus.

[11]

50.

However, OnPath refused to honor the Contract and illegally refused to use the example calculation formula to calculate the bonus.

51.

OnPath breached the Contract by calculating the bonus without considering the example calculation formula in the Contract. OnPath's alternative calculation ignoring the example calculation formula language is below:

| Commercial Lending Compensation Plan- Team Incentive | | |
|---|---|---|
| Yearly payout | 2022 Team Incentives | |
| | | |
| # of Team Members: | 4 | |
| | | |
| | | |
| Commercial Portfolio Balance December 31, 2022 | $94,113,012.00 | |
| Net Growth Threshold | 1.50% | |
| Year End Net Profitability | 3.01% | |
| Net difference | 1.51% | |
| Net Portfolio Above Threshold | $1,421,106.48 | |
| 5% Incentive to be divided by team total | $71,055.32 | |
| Total Profit sharing payout per team member | $17,763.83 | |
| Total Origination Fees Collected for 2022 | $360,406.93 | |
| 0.15 bps incentive on Origination Collect Payout | $54,061.04 | |
| Total  Origination fees Collected Payout per  Commercial Team Member | $13,515.26 | |
| | | |
| | | |
| Total Annual Incentive Payout per Commercial Team Member | $31,279.09 | |
| | | |
| | | |
| Name | Qualified | Paid Incentive |
| Daniel Russo | Y | $31,279.09 |
| Reilly Cavanaugh | Y | $31,279.09 |
| Kiara Scott | Y | $31,279.09 |
| Lacey Keefe | Y | $31,279.09 |
| | | $125,116.36 |
| | | |
| | | |
| Approving VP of Lending: ___Daniel Russo___ | | |
| Approving Chief Operations Officer: _____ | | |
| | | |

**Figure 4.  OnPath's Incentive Payment Calculation**

[12]

52.

Mr. Russo recorded his conversations related to compensation with his direct report, COO Kristen DeDual.  Mr. Russo provided Lillis Law Firm with 6 complete and unedited voice recording files of these conversations.  See Affidavit attached hereto as Exhibit A.  Lillis Law Firm provided the same 6 complete and unedited voice recording files and dates the recordings were made to Roger D. Johns, Certified Court Reporter, for transcription. See Declaration attached hereto as Exhibit B.  The transcript of these conversations is attached hereto as Exhibit C. Irrelevant personal details have been redacted from this transcript to protect third parties.  An unredacted transcript can be provided and the raw audio recordings can be filed into the record in this case under seal. These recordings demonstrate OnPath agrees that enforcing the Contract as written results in a $298,853.14 payment to each commercial lending team member. Additionally, these recordings demonstrate Mr. Russo continually disputed the legality of the partial bonus payment made by OnPath in January 2023.

53.

These recorded conversations demonstrate OnPath used the example formula calculation to determine the bonus owed under the Contract throughout 2022 and only refused to honor the Contract in December 2022.

54.

Included in these recorded conversations was Mr. Russo's March 9, 2023 termination with OnPath's COO Kristen DeDual and Human Resources Representative Jessica DeGruy.[4]

---

[4] See Exhibit C p. 130-146.

55.

At the time OnPath fired Mr. Russo, COO Kristen DeDual told him he was terminated, in part, due to his handling of the bonus wages due under the Contract.[5]

56.

OnPath told Mr. Russo he was being fired, in part, because he submitted the request in January 2023 for each of the team members to be paid $298,853.14.[6]

57.

OnPath's COO stated: "it wasn't managed and it was submitted as $300,000."[7]

58.

OnPath's COO told Mr. Russo: "It's important as a leader to be able to be on the same page and support the leader so that I can support you so that you can manage expectations and that was not done." "If they are quitting because of expectations of being paid, you know, for them to all quit on the same day, that's half your team." In fact, Mr. Cavanaugh and Ms. Scott both resigned their positions on March 9, 2023 prior to Mr. Russo's termination.[8]

59.

Despite authoring and agreeing to the Contract, OnPath told Mr. Russo: "We weren't going to pay Reilly $300,000, for what?"[9]

---

[5] See Exhibit C p. 130-146.
[6] See Exhibit C p. 130-146.
[7] See Exhibit C p. 138.
[8] See Exhibit C p. 138.
[9] See Exhibit C p. 141.

[14]

60.

OnPath's Human Resources Representative Jessica DeGruy was present at this meeting and added, "It's not personal at all.  Like you said, it was hey, I am a leader, I made this error, you know, it was overcalculated because it was rushed through the thing.  She expected you to be able to catch it and not hold it to that."[10]

61.

In fact, the Contract called for a $1,195,412.56 bonus and nothing was overcalculated.

62.

At this meeting, the following exchange occurred:

Daniel Russo:         So my position is eliminated because I was expected to catch her error.

Kristen DeDual:      No, that's not why.

Jessica DeGruy:      **It's not just that part.[11]**

63.

OnPath, through its human resources department acknowledged Mr. Russo was being fired, in part, because he would not leverage his team to accept less than they were contractually owed pursuant to the Contract.

64.

The FLSA prohibits retaliation for reporting errors in employee compensation.

---

[10] See Exhibit C p. 144-145.
[11] See Exhibit C p. 145.

65.

The FLSA prohibits retaliation for participating in protected activities, including complaining about errors in employee compensation and the legality of OnPath refusing to pay compensation in accordance with the Contract. 29 U.S.C. § 215(a)(3).

66.

Mr. Russo was terminated for reporting errors in employee compensation and questioning the legality of OnPath refusing to pay compensation in accordance with the Contract.

67.

In fact, Mr. Russo's complaints to OnPath concerning pay were sufficiently clear and detailed for a reasonable employer to understand the complaints as an assertion of rights protected under Federal Law and a call for his team to paid in accordance with their Contract and the law.

68.

In fact, OnPath's termination of Mr. Russo constituted an adverse employment action.

69.

In fact, Mr. Russo's pre-termination discussions with OnPath establish a causal link between the protected activity of complaining about pay and his termination.

70.

In fact, Mr. Russo made complaints about OnPath illegally breaching the Contract to Ms. DeDual prior to his termination.

71.

In fact, Ms. DeDual and Mr. Russo had the following conversation on January 20, 2023:

Kristen DeDual:        So why is this such a surprise then? Like they really didn't expect -

[16]

|  | Right. And that was – I was surprised you submitted what you submitted, too. Because it was the exact opposite of what he had talked about how it would be calculated. |
|---|---|
| Daniel Russo: | Well, I told you, I submitted what the document – what I believe to be correct as the document prescribed. |
| Kristen DeDual: | No, but that to me sounds like there's some sort of threatening legal action coming my way, because if we had a conversation and said that's not – this is why, this is how it's going to be, and you had a conversation with them, then – |
| Daniel Russo: | Yes. |
| Kristen DeDual: | -- the expectation would be this, not the original.[12] |

72.

In fact, on January 20, 2023, Mr. Russo was complaining about the legality of OnPath's refusal to honor the contract.

73.

OnPath acted with malice and reckless disregard for Mr. Russo's federally protected rights.

**COLLECTIVE ACTION ALLEGATIONS**

74.

On information and belief, other employees have been victimized by OnPath's patterns, practices and policies identified above in violation of the FLSA.

---

[12] See Exhibit C p. 122-123.

[17]

75.

Mr. Cavanaugh brings this action for violations of the FLSA as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were, are, or will be employed by OnPath on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), in the job positions known as "Loan Officer" (the "Covered Employees").

76.

At all relevant times, Mr. Cavanaugh and the other Covered Employees are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to OnPath's common practices, policies, programs, procedures, protocols, and plans of willfully failing and refusing to pay them at the legally required time-and-a-half rates for work in excess of forty (40) hours per workweek, willfully failing to keep records required by the FLSA, and willfully failing and refusing to pay them overtime rates. The claims of the Mr. Cavanaugh stated herein are substantially similar to those of the other Covered Employees.

77.

This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The Covered Employees are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from OnPath. Notice can be provided to the Covered Employees via first class mail to the last address known to OnPath.

## **CAUSE OF ACTION – FAILURE TO PAY WAGES**

78.

Throughout the FLSA Class Period, Mr. Cavanaugh and the other Covered Employees regularly worked in excess of forty (40) hour per work week.

79.

At all relevant times, OnPath willfully, regularly, and repeatedly failed to pay Mr. Cavanaugh and the other Covered Employees overtime compensation at one and one-half times their regular rate for all hours worked in excess of forty (40) hours per work week, in direct violation of the FLSA. 29 U.S.C. §§ 206(a), 207(a).

80.

Mr. Cavanaugh and the Covered Employees are entitled to damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees, costs of pursuing this action, and all other legal and equitable relief as the Court deems just and proper. Mr. Cavanaugh's FLSA consent form is attached hereto as Exhibit D.

## **RETALIATION DAMAGES**

81.

As a result of the foregoing, Plaintiff Daniel Russo is entitled to an award of damages to include all compensatory, special, punitive, and other damages as are reasonable in the premises including, but not limited to: back pay, front pay, emotional distress, mental anguish, punitive damages, attorneys' fees, expert witness fees, judicial interest, court costs, and all other relief to which he may be entitled to by law or equity.

[19]

## JURY REQUEST

82.

Mr. Cavanaugh and Mr. Russo request a trial by jury on all claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Reilly Cavanaugh, individually, and on behalf of all others similarly situated, respectfully prays that this Court:

a.    Issue an order that the FLSA collective action be certified;

b.    Issue an order that Plaintiff be appointed representative of the FLSA Collective Plaintiffs;

c.    Authorize the issuance of notice at the earliest possible time to all Covered Employees, informing them of their rights to participate in this lawsuit if they should so desire;

d.    Declare that OnPath has violated the overtime provisions of the FLSA as to Plaintiff and all those similarly situated;

e.    Declare OnPath's violations of the FLSA to be willful;

f.    Award Plaintiff and all those similarly situated damages for the amount of unpaid overtime compensation;

g.    Award Plaintiff and all those similarly situated an equal amount as liquidated damages, as specifically permitted under the guidelines of the FLSA;

h.    Award attorneys' fees both for this cause and for any and all appeals as may be necessary;

1.      Award expert witness fees incurred by Plaintiff in the preparation and prosecution

of this action;

j.      Award post judgment interest as allowed by law;

k.      Award costs of court and costs of prosecuting Plaintiff's claims; and

1.      Award such other and further relief to which Plaintiff may be justly entitled.

WHEREFORE, Plaintiff Daniel Russo, individually, prays that after due proceedings are

had, there be judgment rendered in his favor with respect to his FLSA retaliation claims, and that

he be awarded compensatory damages, punitive damages, attorneys' fees, costs, legal interest,

expert witness fees, and other relief to which he is entitled under law and equity.

Respectfully submitted,

LILLIS LAW FIRM

/s/ Michael E. Lillis
MICHAEL E. LILLIS (LA BAR #33245)
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone:    (504) 581-9065
Facsimile:    (504) 581-7635

and

MARTZELL BICKFORD & CENTOLA
LAWRENCE J. CENTOLA, III (#27402)
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)

**SERVICE OF THE COMPLAINT WILL BE COMPLETED
IN ACCORDANCE WITH FED. R. CIV. P. 4**

[21]